UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA SCHMIDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 2375 CDP |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner of Operations for | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Christina Schmidt brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

## **Procedural History**

On October 1, 2013, the Social Security Administration denied Schmidt's

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

May 2013 applications for DIB and SSI,[2] in which she claimed she became disabled on January 1, 2011, because of back pain, high blood pressure, depression, and anxiety. Schmidt later amended her disability onset date to August 10, 2011. At Schmidt's request, a hearing was held before an administrative law judge (ALJ) on July 13, 2015, at which Schmidt testified. A medical expert and vocational expert later responded to interrogatories put to them by the ALJ. A supplemental hearing was then held on June 15, 2016, at which the vocational expert testified. On August 10, 2016, the ALJ denied Schmidt's claims for benefits, finding the vocational expert's testimony to support a finding that Schmidt could perform work as it exists in significant numbers in the national economy. On July 26, 2017, the Appeals Council denied Schmidt's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Schmidt claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Schmidt argues that the ALJ erred in her RFC assessment because she improperly discredited Schmidt's subjective complaints and improperly relied on the medical expert's opinion, which Schmidt contends was based on an incomplete review of the record. Schmidt also claims that the ALJ improperly relied on the vocational

---

[2] Only the application for SSI is included in the administrative record.

expert's testimony in finding her not disabled because the hypothetical posed to the expert was based on the improperly assessed RFC.

For the reasons that follow, the ALJ did not err in her determination.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Schmidt's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 16) and note that they are admitted in their entirety by the Commissioner (ECF 26-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Facts (ECF 26-2) and note that they are unrefuted by Schmidt. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Schmidt must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and

determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has non-exertional impairments, such as pain or postural limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *Pearsall*, 274 F.3d at 1219.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.  The ALJ's Decision

The ALJ found that Schmidt met the requirements of the Social Security Act through December 31, 2014, and that she had not engaged in substantial gainful activity since August 10, 2011. The ALJ found that Schmidt's degenerative disc disease, bilateral carpal tunnel syndrome, and obesity were severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16.)[3] The ALJ found that since August 10, 2011, Schmidt had the RFC to perform a limited range of unskilled light work, and specifically, that she could

> lift or carry twenty pounds occasionally and ten pounds frequently; sit four hours at a time for a total of eight hours in an eight-hour workday; stand two hours at a time for a total of six hours in an eight-hour workday; occasionally reach overhead bilaterally; frequently

---

[3] The ALJ gave Schmidt "the benefit of doubt regarding the severity of hypertension" (Tr. 15) but determined that her anxiety and depression were non-severe (Tr. 16). Schmidt does not challenge these particular findings.

reach, handle, finger, feel, push and pull bilaterally; frequently operate foot controls bilaterally; occasionally climb stairs or ramps; frequently balance, stoop, kneel and crouch; and frequently operate a vehicle; but she has been unable to: crawl or climb ladders, ropes or scaffolds; have exposure to unprotected heights and vibration; or have more than occasional exposure to moving mechanical parts. She is limited to tasks that are simple and routine (due to the effects of pain on concentration).

(Tr. 16.) The ALJ determined that this RFC prevented Schmidt from performing her past relevant work as a payroll clerk or claims processor. (Tr. 20.)

Considering Schmidt's RFC and her age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Schmidt could perform work as it exists in significant numbers in the national economy, and specifically as a cashier II, rental clerk, companion, maid, and rental car deliverer. The ALJ therefore found Schmidt not to be disabled. (Tr. 20-21.)

C.  RFC Assessment

Schmidt claims that the ALJ erred in her RFC assessment because she improperly discredited her subjective complaints and improperly relied on the medical expert's opinion, which Schmidt contends was based on an incomplete review of the record.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the

observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1. *Evaluation of Symptoms*[4]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017

---

[4] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Here, after finding at Step 3 of the sequential analysis that Schmidt's impairments did not meet the criteria for listing level disability, the ALJ evaluated Schmidt's statements of symptoms and assessed her RFC. The ALJ addressed each of the *Polaski* factors and made specific findings that Schmidt's claimed symptoms were inconsistent with the record. Because

these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

First, the ALJ reviewed the objective medical evidence of record, noting that after Schmidt's cervical fusion surgery in May 2013, diagnostic tests showed mild radiculopathy and moderate canal narrowing along the cervical spine, and small disc protrusion along the lumbar spine. Additional tests showed moderate canal stenosis and mild neuroforaminal narrowing along the cervical spine (Tr. 1394), as well as mild flattening of the thecal sac along the cervical spine with a small right focal disc osteophyte bulge (Tr. 1271). Tempered medical findings of "mild" or "minimal" impairments, including degenerative disc disease, are inconsistent with subjective complaints of disabling pain. *Steed v. Astrue*, 524 F.3d 872, 875-76 (8th Cir. 2008). *See also Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may make factual determination that claimant's subjective complaints of pain are not credible in light of objective medical evidence to the contrary).

Further, throughout her physical examinations, Schmidt continually showed full motor strength, adequate range of motion, strong hand grip, and negative straight leg raising. She also continually denied any radiating pain, numbness, or weakness. To the extent the record includes other medical evidence that Schmidt exhibited cervical pain with range of motion and some lumbar tenderness to

palpation, it is the ALJ's duty to resolve conflicts in the evidence, including medical evidence, and I may not substitute my opinion for the ALJ's. *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). The ALJ's observation that Schmidt's treating physicians did not impose any work-related restrictions also supports her determination that Schmidt's complaints were not entirely consistent with the record. *See Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996).

The ALJ also noted that Schmidt's daily activities of performing household chores, cooking, doing laundry, grocery shopping, driving, and raising four children ages five through fifteen were inconsistent with her complaints of disabling pain. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Brown v. Barnhart*, 390 F.3d 535, 541-42 (8th Cir. 2004). While Schmidt testified – and the ALJ acknowledged – that she performs some of these activities with help, receiving assistance does not preclude an ALJ from considering such activities when judging the consistency of a claimant's complaints. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (help from spouse); *Brown*, 390 F.3d at 541 (help with child from part-time assistant). The ALJ therefore did not err in considering these activities in determining the consistency of Schmidt's complaints.

To the extent Schmidt argues that the limited activities as described in her

Function Report are consistent with her subjective complaints and that the ALJ erred by failing to acknowledge this consistency, I note first that the Report to which Schmidt cites (Tr. 266-73) was completed in June 2013 by someone other than Schmidt and whose relationship is not disclosed in the Report. Further, the Function Report actually completed by Schmidt herself in June 2013 (Tr. 329-39) shows that several of her claimed limitations at that time were related to her recovery from cervical fusion surgery that she had had one month prior; that such recovery involved wearing a neck brace twenty-four hours a day; and that she nevertheless demonstrated an ability to engage in substantial daily activities at that time, such as preparing meals, dressing and caring for her children, caring for pets, performing household chores, shopping for groceries once a week, managing money, and reading and playing games with family on a daily basis.

The ALJ also noted that Schmidt's treatment regimen provided her relief, specifically noting that she obtained benefit from steroid injections and experienced only minimal side effects, if any, from her medications. Although Schmidt testified that injection therapy provided relief for only one week, a review of the medical record shows that she obtained significant relief from lumbar injections for one month. *See Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (inconsistency in a claimant's statements valid reason to discredit subjective complaints). Although the cervical injections were not as successful, Schmidt

repeatedly reported to her treating physicians that she nevertheless obtained good benefit from her medications and experienced no side effects from them. Where an impairment can be controlled by treatment, it cannot be considered disabling. *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010); *Rhodes v. Apfel*, 40 F. Supp. 2d 1108, 1122 (E.D. Mo. 1999) (ALJ did not err in discrediting subjective complaints where evidence showed that symptoms were relieved through appropriate treatment). *See also Depover v. Barnhart,* 349 F.3d 563, 566 (8th Cir. 2003) (no medical records during relevant time period mention the claimant having side effects from any medication).

I recognize that Schmidt's treatment included long term use of narcotic pain medication. While this circumstance shows that Schmidt indeed experienced pain, *see Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002), the mere taking of narcotic pain medication does not require an ALJ to credit a claimant's subjective complaint that her pain is disabling – especially where the medical evidence shows that the claimant obtained good benefit from the medication and had no restrictions placed on her activities by any treatment provider. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). As is often stated, the issue is not whether the claimant experiences pain, but whether the pain is disabling. *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).

Accordingly, in a manner consistent with and as required by *Polaski*, the

ALJ evaluated Schmidt's statements of symptoms on the basis of the entire record and articulated specific reasons in finding that Schmidt's symptoms were inconsistent with the record. Because this determination is supported by good reasons and substantial evidence, I must defer to it, *Julin*, 826 F.3d at 1086, even if I could have reached a different conclusion. *Girshner v. Berryhill*, No. 4:16-CV-03451-NKL, 2017 WL 2859930, at *8 (W.D. Mo. July 5, 2017).

    2.    *Medical Expert Opinion*

In December 2015, after the first hearing, the ALJ submitted written interrogatories to Dr. Anne Winkler, a medical expert, seeking her opinion regarding Schmidt's physical ability to engage in work-related activities based on a review of the objective medical evidence of record. In response, Dr. Winkler opined that since April 2, 2013,[5] Schmidt could lift and carry up to ten pounds frequently and twenty pounds occasionally; could sit up to four hours at one time during an eight-hour workday, and for a total of eight hours; could stand up to two hours at one time during an eight-hour workday, and for a total of six hours; and walk up to two hours at one time during an eight-hour workday, and for a total of six hours. Dr. Winkler also opined that Schmidt could occasionally reach

---

[5] The record shows that prior to April 2013, Schmidt complained of intermittent back pain for which she was prescribed medication and stretching exercises. In April 2013, however, an MRI showed severe canal stenosis with cord compression and disc extrusion at C6-7; moderate stenosis at C3-4; and right-sided disc herniation at C5-6. Schmidt underwent cervical diskectomies, decompression, and fusion for these conditions in May 2013.

overhead bilaterally and could frequently reach, handle, finger, feel, and push bilaterally.  Dr. Winkler opined that Schmidt could not climb ladders or scaffolds and could not crawl, but could occasionally climb stairs and ramps and could frequently balance, stoop, kneel, and crouch.  Finally, Dr. Winkler opined that Schmidt should not be exposed to unprotected heights or vibrations, but otherwise was not significantly limited with regard to environmental conditions.  (Tr. 1369-82.)[6]  The ALJ gave great weight to Dr. Winkler's opinion and incorporated many of her conclusions into the RFC assessment.

Schmidt claims that the ALJ erred by relying on Dr. Winkler's opinion when assessing her RFC because the opinion was based upon the expert's review of only select exhibits and not upon the entire administrative record.  Schmidt's argument is misplaced.

It is the ALJ – and not a medical or other expert – who is charged with the duty to review all relevant, credible evidence in the record, including all the medical and nonmedical evidence, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  A medical expert's opinion need not address the entirety of the record.  Instead, it becomes a part of the record that the ALJ must consider and weigh – along with all the other evidence of record – when determining disability.  *See Wagner*, 499 F.3d

---

[6] Dr. Winkler opined that during the period prior to April 2, 2013, Schmidt was not as limited in her lifting/carrying, use of hands, postural abilities, and environmental exposures.

at 848. And an ALJ may reject the conclusions of a medical expert if they are inconsistent with the record as a whole. *Id*.; *Pearsall*, 274 F.3d at 1219.

Here, in addition to Dr. Winkler's interrogatory responses on what the objective medical evidence indicated, the ALJ also specifically considered the extensive medical evidence of record consisting of treatment notes, hospital records, and results of diagnostic testing; Schmidt's testimony of her symptoms and limitations; and the opinion of a State agency psychologist regarding Schmidt's mental impairment. The ALJ thoroughly discussed all of this evidence and accorded Dr. Winkler's opinion great weight because it was consistent with the record as a whole and was based on a longitudinal review of Schmidt's medical history. The ALJ did not err in this process. 20 C.F.R. §§ 404.1527, 416.927.

To the extent Schmidt takes issue with the ALJ's characterization that Dr. Winkler had the opportunity to review the hearing record "in its entirety" when in fact she reviewed only the objective medical evidence, this arguable deficiency in opinion-writing technique had no bearing on the result and does not warrant remand. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008). Further, because the primary purpose of securing a medical expert is to help the ALJ evaluate the medical evidence in a case, a medical expert's review of the record is generally limited to the medical evidence. *See* HALLEX[7] I-2-5-32 (SSA), 1994 WL 637369

---

[7] Hearings, Appeals, and Litigation Law (HALLEX) manual.

(last updated Aug. 29, 2014); HALLEX I-2-5-34 (SSA), 1994 WL 637370 (last updated Apr. 1, 2016). Accordingly, Dr. Winkler's review of only the objective medical evidence and not the entire hearing record was appropriate and does not render her opinion suspect. Consequently, the ALJ's deficiency in writing that the expert reviewed the entire hearing record when in fact she only reviewed the medical evidence does not require reversal. *See Hepp*, 511 F.3d at 806.

The ALJ thoroughly discussed specific medical facts as well as the nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole, and assessed Schmidt's RFC based on the relevant, credible evidence of record. *Accord* SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). Because the RFC is supported by some medical evidence, it will not be disturbed. *See Baldwin v. Barnhart,* 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

D.  Vocational Expert Opinion

Schmidt claims that because the hypothetical posed by the ALJ to the vocational expert was based on the ALJ's flawed RFC analysis, the vocational expert's opinion could not constitute substantial evidence to support the ALJ's finding of non-disability. As discussed above, however, the ALJ properly determined Schmidt's RFC based on substantial medical and other evidence of record. Because the hypothetical posed to the vocational expert included all of the

RFC limitations as determined by the ALJ, the ALJ did not err in relying on the expert's opinion given in response to this proper hypothetical. *Guilliams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers.").

**Conclusion**

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel,* 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id*. *See also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Schmidt was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision,

it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Christina Schmidt's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2019.